**HERMAN JONES LLP**
SERINA M. VASH (NJ Bar. No. 041142009)
153 Central Avenue #131
Westfield, NJ 07090
Telephone: (404) 504-6516
Facsimile: (404) 504-6501
svash@hermanjones.com

Co-Liaison Counsel for Plaintiffs

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE BECTON, DICKINSON AND COMPANY STOCKHOLDER DERIVATIVE LITIGATION | Master File No. 2:20-cv-15474-SRC-CLW |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# **TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ........................................................................1

II. THE ALLEGATIONS, PROCEDURAL HISTORY, AND
SETTLEMENT NEGOTIATIONS ...............................................5

    A. Plaintiffs' Allegations...............................................................5

    B. Procedural History....................................................................6

        1. The Consolidated Federal Derivative Action ............................6

        2. The Related State Court Action ...................................9

        3. The Underlying Securities Class Action..................................11

    C. Settlement Negotiations ..........................................................12

III. SETTLEMENT CONSIDERATION ..........................................13

IV. STANDARDS FOR PRELIMINARY APPROVAL....................14

V. THE SETTLEMENT FALLS WITHIN THE RANGE OF
APPROVAL AS FAIR, REASONABLE, AND ADEQUATE....................17

    A. The Settlement Warrants a Presumption of Fairness.........................17

    B. The Relevant *Girsh* Factors Confirm the Settlement Falls
Within the Range of Reasonableness..................................21

        1. The Settlement Confers Substantial Benefits on BD................22

        2. The Settlement's Substantial Benefits Far Outweigh the
Speculative Chance that a Substantially Greater
Recovery Might Be Secured Through Further Litigation
(First, Fourth, Fifth, Eighth, and Ninth *Girsh* Factors) ............29

        3. The Degree of Case Development Allows the Parties to
Make Well-Informed Judgments Regarding the Merits
and the Proposed Settlement (Third *Girsh* Factor)..................36

i

VI.   THE PROPOSED NOTICE, PROCEDURE, AND SCHEDULE FOR CONSIDERING FINAL APPROVAL AFFORD DUE PROCESS............38

VII.   CONCLUSION.............................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                    **PAGE(S)**

*Allred v. Walker*,
    2021 U.S. Dist. LEXIS 236249 (S.D.N.Y. Dec. 9, 2021)................................39

*Alves v. Main*,
    2012 WL 6043272 (D.N.J. Dec. 4, 2012) ........................................................18

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) ...............................................................................22

*Beltran v. SOS Ltd.*,
    2023 WL 319895 (D.N.J. Jan. 3, 2023) ............................................................23

*Bredbenner v. Liberty Travel, Inc.*,
    2011 WL 1344745 (D.N.J. Apr. 8, 2011)..........................................................19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..............................................................................21

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ..............................................20, 24, 25, 29

*Copley v. Evolution Well Servs. Operating, LLC*,
    2023 WL 1878581 (W.D. Pa. Feb. 10, 2023) ...................................................19

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ..........................................................................................34

*Fulton-Green v. Accolade, Inc.*,
    2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)....................................................17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ..............................................................................21

*Gottlieb, on behalf of Johnson & Johnson v. Beckerle*,
    2024 WL 678007 (N.J. Super. Ct. Feb. 20, 2024).............................................31

*Huffman v. Prudential Ins. Co.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)........................................................18

*In re Am. Fam. Enters.*,
256 B.R. 377 (D.N.J. 2000)...............................................................................21

*In re AOL Time Warner S'holder Derivative Litig.*,
2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ....................................................24

*In re Apollo Grp., Inc. Sec. Litig.*,
2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ......................................................34

*In re AT&T Corp.*,
455 F.3d 160 (3rd Cir. 2006)...........................................................................22

*In re Auto. Refinishing Paint Antitrust Litig.*,
2004 WL 1068807 (E.D. Pa. May 11, 2004) .............................................16, 19

*In re BD Ins. Co. of Am. Sales Prac. Litig.*,
148 F.3d 283 (3d Cir. 1998) .............................................................................29

*In re BD Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995)................................................................16, 17

*In re Biopure Corp. Derivative Litig.*,
2009 U.S. Dist. LEXIS 148025 (D. Mass. July 24, 2009). ...............................39

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ..........................................................................32

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
2016 WL 7130935 (D.N.J. May 25, 2016) .......................................................17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................35, 36

*In re Gen. Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........................................................15, 29, 30, 35

*In re Healthcare Servs. Grp., Inc. Derivative Litig.*,
  2022 WL 2985634 (E.D. Pa. July 28, 2022) .......................................................36

*In re Hemispherx Biopharma, Inc. Sec. Litig.*,
  2011 WL 13380384 (E.D. Pa. Feb. 14, 2011).................................................23

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ...............................................................17

*In re Johnson & Johnson Derivative Litig.*,
  900 F. Supp. 2d 467 (D.N.J. 2012)........................................................... Passim

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ................................33

*In re MRV Communs., Inc. Derivative Litig.*,
  2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013).................................39

*In re Metro. Life Ins. Co. Sales Pracs. Litig.*,
  1999 WL 33957871 (W.D. Pa. Dec. 28, 1999)...................................................17

*In re NVIDIA Corp. Derivative Litig.*,
  2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) ..............................24

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016)................................................ Passim

*In re Oracle Corp.*,
  867 A.2d 904 (Del. Ch. 2004) ..........................................................32

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................30

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ......................................................23

*In re Pittsburgh & L. E. R. Co. Sec. & Antitrust Litig.*,
  543 F.2d 1058 (3d Cir. 1976). ..........................................................22

*In re Prudential Financial, Inc.*,
 2022 WL 20747701 (D.N.J. July 19, 2022) .......................................................30

*In re Prudential Ins. Co. Deriv. Litig.*,
 282 N.J. Super. 256 (1995).............................................................................31

*In re PSE & G S'holder Litig.*,
 173 N.J. 258 (2002). ....................................................................................31

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
 2008 WL 9447623 (D.N.J. Dec. 9, 2008) .........................................................34

*In re Sch. Asbestos Litig.*,
 921 F.2d 1330 (3d Cir. 1990). ........................................................................15

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
 2012 WL 1964451 (D.N.J. May 31, 2012) ........................................................35

*In re Schering-Plough/Merck Merger Litig.*,
 2010 WL 1257722 (D.N.J. Mar. 26, 2010) .....................................20, 21, 22, 33

*In re ViroPharma Inc. Sec. Litig.*,
 2016 WL 312108 (E.D. Pa. Jan. 25, 2016). .......................................................18

*In re Warfarian Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ......................................................................15, 20

*In re Wilmington Tr. Sec. Litig.*,
 2018 WL 6046452 (D. Del. Nov. 19, 2018).......................................................34

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
 620 F. Supp. 3d 167 (D.N.J. 2022).................................................................32

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
 2021 WL 4191467 (D.N.J. Sept. 15, 2021).......................................................32

*Jones v. Com. Bancorp, Inc.*,
 2007 WL 2085357 (D.N.J. July 16, 2007). .......................................................16

*King v. Baldino*,
    409 F. App'x 535 (3d Cir. 2010) ...................................................................32

*Kuehl v. electroCore, Inc.*,
    2023 WL 3444383 (N.J. Super. App. Div. May 15, 2023) .............................32

*Kyriazi v. Western Elec. Co.*,
    647 F.2d 388 (3d Cir. 1981) ...........................................................................38

*Lewis v. Anderson*,
    692 F.2d 1267 (9th Cir. 1982) .......................................................................24

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ...................................................................15, 25

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ...................................................................................32

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007) ...............................................................17, 18

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970). ......................................................................................24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .......................................................................................38

*Mulroy v. Nat'l Water Main Cleaning Co. of N.J.*,
    2014 WL 7051778 (D.N.J. Dec. 12, 2014) .....................................................21

*Plymouth Cnty. Contributory Ret. Sys. v. Hassan*,
    2012 WL 664827 (D.N.J. Feb. 28, 2012). ................................................30, 34

*Pro v. Hertz Equip. Rental Corp.*,
    2013 WL 3167736 (D.N.J. June 20, 2013). ....................................................29

*Refinishing Paint Antitrust Litig.*,
    2006 U.S. Dist. LEXIS 93936 (E.D. Pa. Dec. 28, 2006). ...............................17

*Schuler v. Meds. Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016) ......................................................23

*Seidman v. Clifton Sav. Bank, S.L.A.*,
205 N.J. 150 (2011). ........................................................................................33

*Shlensky v. Dorsey*,
574 F.2d 131 (3d Cir. 1978) ......................................................................21, 22

*Singleton v. First Student Mgmt. LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014). .....................................................29

*Smith v. Pro. Billing & Mgmt. Servs., Inc.*,
2007 WL 4191749 (D.N.J. Nov. 21, 2007) ....................................................16

*Tenuto v. Transworld Sys., Inc.*,
2001 WL 1347235 (E.D. Pa. Oct. 31, 2001) ..................................................16

*Thomas v. NCO Fin. Sys., Inc.*,
2002 WL 1773035 (E.D. Pa. July 31, 2002) ..................................................16

*Unite Nat. Ret. Fund v. Watts*,
2005 WL 2877899 (D.N.J. Oct. 28, 2005) ..........................................22, 25, 35

*Utah Ret. Sys. v. Healthcare Servs. Grp. Inc.*,
2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ...............................................19, 23

*Varacallo v. Mass. Mut. Life Ins. Co.*,
*226* F.R.D. 207 (D.N.J. 2005) .......................................................................18

*Vinh Du v. Blackford*,
2018 U.S. Dist. LEXIS 167103 (D. Del. Sept. 28, 2018) ...............................21

*Weaver v. Moen*,
2024 WL 4040355 (D. Del. Sep. 4, 2024) .....................................................36

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995)....................................................................35

Statutes

N.J. Rev. Stat. §14A:5-28 .................................................................9, 10, 11

N.J. Stat. Ann. § 14A:3-6.5(1)(a), (2)(a) .............................................31

N.J.S.A. §14A:2–7(3). .........................................................................33

N.J.S.A. § 14A:3-6.5(5)(c)....................................................................30

N.J.S.A. §§14A:3-6.5...........................................................................31

N.J.S.A. §§14A:3-6.5(4), (5)(a)(ii) .......................................................31

Rules

Fed. R. Civ. P. 23.1(c).............................................................................4

Fed. R. Civ. P. 23.1(c)(1)......................................................................14

Fed. R. Evid. 702 .................................................................................34

Other Authorities

*Manual for Complex Litigation*, §21.632 (4th ed. 2004)........................16

## I.    INTRODUCTION

The Parties have agreed to resolve this consolidated stockholder derivative action brought on behalf of Becton, Dickinson and Company ("BD" or the "Company") and a related state court derivative action[1] (collectively, the "Derivative Actions") on the terms set forth in the Stipulation of Settlement dated June 5, 2025 (the "Stipulation" or "Stip.").[2]  Plaintiffs Jeff Schranz ("Schranz") and Ronald Jankowski ("Jankowski") (collectively, "Federal Derivative Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (the "Motion"),[3] which seeks entry of an order preliminarily approving the Settlement, authorizing dissemination of notice to Current BD Stockholders, and setting a schedule for final approval proceedings.

The Derivative Actions allege that the Individual Defendants, current or former officers and/or members of the Board of Directors (the "Board") of nominal defendant BD,[4] breached their fiduciary duties owed to BD and its stockholders by

---

[1] *Lotz v. Burzik, et al.*, Case No. BER-L-000174-24 (N.J. Super. Ct. – Bergen Cnty) (the "Consolidated State Court Action").

[2] Unless otherwise defined herein, all defined terms shall have the meanings set forth in the Stipulation, attached as Ex. 1 to the Declaration of Shane P. Sanders in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement concurrently filed herewith.  All internal citations and quotation marks have been omitted, and all emphasis has been added.

[3] Defendants do not oppose the Motion and support approval of the Settlement for the reasons set forth in Section III of the Stipulation, but do not join in this Memorandum.

[4] The "Individual Defendants" are: Vincent A. Forlenza, Thomas E. Polen, Christopher R. Reidy, Catherine M. Burzik, R. Andrew Eckert, Claire M. Fraser, Jeffrey W. Henderson, Christopher Jones, Marshall O. Larsen, David F. Melcher,

making and/or causing or permitting BD to make materially false and misleading statements that failed to disclose known issues with BD's Alaris System; selling personally held shares of BD stock at artificially inflated prices while in possession of material nonpublic adverse information; and consciously failing to fulfill their oversight duties in the face of the Alaris System issues. Plaintiffs[5] contend the Individual Defendants' alleged misconduct (among other harm to BD) caused a significant loss in BD's market capitalization and exposed the Company to liability in the underlying Securities Class Action (*Industriens Pensionsforsikring A/S v. Becton, Dickinson and Company, et al.*, Case No. 2:20-cv-02155 (D.N.J.)).[6] Each of the Defendants has expressly denied and continues to deny any fault, liability, or wrongdoing whatsoever as to any facts or claims alleged or asserted in the Derivative Actions, and all of the claims and contentions alleged, or which could have been alleged, therein or in similar such actions, including that BD has suffered damage by or as a result of the conduct alleged in the Derivative Actions or similar such actions. *See* Stip., §III.

In consideration for the release of derivative claims against the Individual

---

Claire Pomeroy, Rebecca W. Rimel, Timothy M. Ring, and Bertram L. Scott.

[5] The Federal Derivative Plaintiffs and Agnes Lotz ("Lotz" or the "State Court Plaintiff") are collectively referred to herein as "Plaintiffs".

[6] The underlying Securities Class Action ultimately settled, but only approximately $3.7 million was paid out-of-pocket by BD. In December 2024, after the Parties signed the Term Sheet, BD also announced that it would settle related claims with the SEC for $175 million.

Defendants, the Settlement provides that: (1) the Individual Defendants' insurance carriers will effectuate a cash payment of $9 million to BD; and (2) BD shall implement and maintain for no less than four years a set of corporate governance enhancements (the "Governance Modifications"), which include, *inter alia*: (i) enhancements to the duties and responsibilities of BD's management-level Disclosure Committee, to be reflected in an amended Charter; (ii) enhanced Board reporting related to regulatory compliance and product-related issues; (iii) a requirement that BD retain an independent corporate governance expert to review and evaluate BD's corporate governance practices, compare these practices with best practices, and assist the Corporate Governance and Nominating Committee ("CGNC") in developing recommendations to the Board regarding any actions to take based on its evaluation, including the implementation of new processes and procedures; (iv) a requirement that BD publish on its corporate website its complete Insider Trading Policy and its Discretionary Clawback Policy; and (v) enhanced director independence vetting requirements.

The Settlement Fund and the Governance Modifications confer substantial benefits on BD and fall well within the range that might be approved as fair, reasonable, and adequate. Plaintiffs believe their derivative claims are meritorious. But the Settlement's guarantee of a substantial and immediate cash recovery, together with the valuable Governance Modifications, better serves the Company's

interests than continued litigation in pursuit of the speculative chance that a materially greater recovery might be secured at trial years from now, particularly when discounted by the substantial costs, delay, and distraction such litigation would entail, and the risk that further litigation would yield no recovery at all.

The Parties agree that: (a) the initiation, pendency and settlement of the Derivative Actions, and Plaintiffs' efforts in connection therewith, including their pre-suit efforts, were the cause of the creation of the Settlement Fund and were a material factor in the implementation of the Governance Modifications; (b) the Governance Modifications confer a material benefit on BD; and (c) the Settlement is in all respects fair, reasonable, and in the best interests of BD and its stockholders.

Plaintiffs' conclusion that the Settlement serves BD's best interests is fully informed and carefully considered. Plaintiffs' Counsel diligently evaluated the extensive public record regarding the Alaris System and the issues associated therewith, the confidential record of the investigation conducted by the Board's Special Committee tasked with reviewing Plaintiffs' litigation demands, and the Special Committee's conclusion that no claims should be pursued and the applicable standard for overcoming such a determination. Plaintiffs' Counsel also tested the relative strengths and weaknesses of the claims and defenses in months of arm's-length negotiations with skilled and experienced defense counsel, including mediation overseen by David M. Murphy of Phillips ADR Enterprises (the

"Mediator").

The proposed form and method of notice to Current BD Stockholders (*see* Stip., Exs. B-1 & B-2) and the procedures and schedule for the Court's evaluation of the Settlement comport with Fed. R. Civ. P. 23.1(c) ("Rule 23.1(c)") and meet due process standards. Plaintiffs request that the Court enter the [Proposed] Preliminary Approval Order (Stip., Ex. B, and separately submitted herewith).

## II. THE ALLEGATIONS, PROCEDURAL HISTORY, AND SETTLEMENT NEGOTIATIONS

### A. Plaintiffs' Allegations

BD, a New Jersey corporation, is a global medical technology company that develops, manufactures, and sells a broad range of medical supplies, devices, laboratory equipment, and diagnostic products worldwide. ¶22.[7] One of BD's main products is the Alaris System, a large volume infusion pump that continuously or intermittently delivers fluids, medications, blood and blood products to adult, pediatric, or neonatal patients. ¶5. Alaris, like many of BD's products, is subject to regulation by the U.S. Food and Drug Administration (the "FDA") as to initial commercialization, quality control systems for continued manufacturing, and the implementation of changes or modifications. *See, e.g.*, ¶¶6-7, 51-54

---

[7] References to "¶__" refer to Plaintiff Schranz's Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Unjust Enrichment. *Schranz v. Polen et al.*, C.A. No. 2:21-cv-01081 (D.N.J.) ("*Schranz* Action"), ECF No. 1. Defendants answered the Complaint and denied its material allegations.

Plaintiffs allege that between November 5, 2019 and February 5, 2020, the Individual Defendants made a series of false and misleading statements regarding the extent of Alaris software defects and modifications, ongoing scrutiny of the device by the FDA, and the potential corresponding impact on BD's financial position. ¶¶59-67. Plaintiffs further allege that these misstatements artificially inflated BD's stock price and caused BD to incur legal and regulatory liability. ¶¶76-78, 84. Additionally, Plaintiffs allege that certain of BD's officers and directors sold BD stock at artificially inflated prices based on their knowledge of material non-public information regarding the Alaris defects and FDA scrutiny. ¶¶78-84.

### B.  <u>Procedural History</u>

#### 1.  **The Consolidated Federal Derivative Action**

In April and May of 2020, Federal Derivative Plaintiffs separately sent litigation demands to the Board pursuant to New Jersey law, demanding that the Board take all necessary steps to investigate, address, and promptly remedy the alleged harm to BD resulting from the above alleged misconduct. *See* Stip., §I(B). Federal Derivative Plaintiffs also demanded that the Board take all necessary actions to reform and improve BD's corporate governance and internal procedures to comply with all applicable laws, and to protect BD from similar misconduct in the future. *Id*. On October 14, 2020, BD informed Federal Derivative Plaintiffs that the Board formed the Special Committee to investigate. *Id*.

On November 2, 2020, plaintiff Jankowski filed a shareholder derivative complaint in this Court, initiating the *Jankowski* Action, against certain of BD's officers and directors, naming BD as a nominal defendant and pleading claims for breach of fiduciary duty and insider selling under New Jersey law, contribution under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), and violations of Section 14(a) of the Exchange Act.  *See* Stip., §I(B); ECF No. 1.  On November 25, 2020, the Court entered a stipulation and order staying proceedings in the *Jankowski* Action pending the Board's formal response to plaintiff Jankowski's demand.  *See* Stip., §I(B); ECF No. 4.

On January 24, 2021, plaintiff Schranz filed a substantially similar shareholder derivative complaint in this Court, initiating the *Schranz* Action, against certain of the Company's officers and directors, naming the Company as nominal defendant and asserting claims for breach of fiduciary duty and unjust enrichment under New Jersey law.  *See* Stip., §I(B); *Schranz* Action, ECF No. 1.

On February 5, 2021, the Court entered a stipulated order consolidating the *Jankowski* Action and the *Schranz* Action into this Action (also referred to herein as the "Consolidated Federal Derivative Action"), which, *inter alia*, subjected this Action to the *Jankowski* Action stay order and appointed co-lead and co-liaison counsel for the Federal Derivative Plaintiffs.  *See* Stip., §I(B); ECF No. 6.

On March 1, 2021 and April 20, 2021, the Company provided the Federal

Derivative Plaintiffs with Board resolutions adopted following the Special Committee's investigation that, *inter alia*, refused the demands and declined to have the Company pursue any of the claims contemplated thereby, and requested that the Federal Derivative Plaintiffs voluntarily dismiss their claims. *See* Stip., §I(B).

Thereafter, the Federal Derivative Plaintiffs requested a range of additional information and documentation. *Id.* On July 30, 2021, after several meet and confers and entry into confidentiality and use agreements, BD provided Federal Derivative Plaintiffs with certain additional information and documentation, including resolutions of the CGNC recommending the creation of the Special Committee, the Board's resolutions forming the Special Committee, independent director questionnaires for the Special Committee members, and redacted versions of the Special Committee's final reports to the Board. *Id.*; ECF No. 8.

On May 5, 2023, Federal Derivative Plaintiffs requested further documents and information. *Id.* On July 21, 2023, the parties to this Action filed a joint letter with the Court outlining their respective positions regarding the Federal Derivative Plaintiffs' entitlement to additional document production. *Id.*; ECF No. 8. A hearing date was set for August 2023, which was later adjourned in light of a then-upcoming mediation in the related Securities Class Action. *See* Stip., §I(B); ECF Nos. 9-10.

Following an in-person status conference with the Court on September 27, 2023 and a status conference in October of 2023, the parties to this Action entered a

stipulation providing for the Federal Derivative Plaintiffs to file a consolidated complaint by November 1, 2023, and a briefing schedule for Defendants' motion to dismiss and any associated discovery motion by Federal Derivative Plaintiffs. *See* Stip., §I(B); ECF Nos. 25-26. Following an agreement in principle to resolve the Securities Class Action, the parties to this Action agreed to explore the possibility of mediation and, on November 1, 2023, filed a stipulation (*See* Stip., §I(B); ECF No. 28), subsequently so-ordered by the Court, adjourning the previously entered case schedule without date and providing for a status report within 45 days. The parties to this Action provided periodic updates to the Court and, on May 13, 2024, notified the Court that they had agreed in principle to mediate. *See* Stip., §I(B); ECF No. 34.

### 2. The Related State Court Action

On March 2, 2021, BD shareholder Shiva Stein ("Stein") issued a pre-suit litigation demand to the Board under New Jersey law, based on substantially the same facts as the Federal Derivative Plaintiffs' demands, demanding that the Board undertake an independent internal investigation into alleged violations of law and commence a civil action against each of the Individual Defendants on behalf of BD. *See* Stip., §I(C). After that litigation demand was refused on April 20, 2021, Stein issued an inspection demand to BD on April 29, 2021 pursuant to N.J. Rev. Stat. §14A:5-28, seeking production of corporate books and records related to and reflecting the Board's and/or Special Committee's evaluation and rejection of

Stein's litigation demand (the "Inspection Request"). *See* Stip., §I(C). On July 30, 2021, BD produced certain documents in response to the Inspection Request (the "§14A:5-28 Production"). *Id*.

On January 10, 2023, the *Stein* Action was filed in the Law Division of the Superior Court of New Jersey, Bergen County vicinage (the "New Jersey State Court"), asserting derivative claims for breach of fiduciary duty against the Individual Defendants under New Jersey law on behalf of BD. *See* Stip., §I(C). The *Stein* Action further alleged wrongful demand refusal, based on the §14A:5-28 Production. *See* Stip., §I(C). On April 11, 2023, the parties filed a joint stipulation to stay further proceedings pending certain developments in the Securities Class Action and/or Consolidated Federal Derivative Action, which was so-ordered by the New Jersey State Court on April 28, 2023. *See* Stip., §I(C).

On September 10, 2024, plaintiff Lotz issued a pre-suit litigation demand to the Board under New Jersey law based on substantially the same facts, demanding that the Board undertake an independent internal investigation into alleged violations of law and commence a civil action against each of the Individual Defendants on behalf of BD. *Id*. On September 26, 2024, plaintiff Lotz filed a derivative complaint in the New Jersey State Court (initiating the *Lotz* Action) against the Individual Defendants, naming BD as nominal defendant, alleging claims for breach of fiduciary duty under New Jersey law, and wrongful demand refusal based on the

§14A:5-28 Production.  *See* Stip., §I(C).

The *Stein* Action was thereafter marked administratively closed pursuant to stipulation of the parties, and subsequently marked voluntarily dismissed without prejudice.  *Id*.  On or around December 4, 2024, the *Lotz* Action was transferred to the Law Division of the New Jersey State Court and consolidated with the dismissed *Stein* Action under a new consolidated docket number (CONSOLIDATED CASE BER-L-007001-24), thus forming the Consolidated State Court Action.[8]  On May 27, 2025, the Consolidated State Court Action was stayed pending the filing of a notice of settlement in the Consolidated State Court Action.  *Id*.

### 3.    The Underlying Securities Class Action

The Securities Class Action was filed in this Court on February 27, 2020, against BD and certain of its officers for alleged violations of Sections 10(b), 20(a) and 20A of the Exchange Act, and U.S. Securities and Exchange Commission ("SEC") Rule l0b-5 promulgated thereunder in connection with a February 2020 stock drop following the announcement of an adverse FDA determination. Securities Class Action, ECF No. 1.  On December 19, 2023, the Securities Class Action parties executed a stipulation of settlement providing for a cash payment to the settlement class, with full releases for all defendants and no admission or

---

[8] By virtue of their involvement in the *Stein* Action, counsel for the State Court Plaintiff coordinated their efforts with counsel for the Federal Derivative Plaintiffs regarding all aspects of mediation and settlement, including the issuance of a joint settlement demand on January 19, 2024.

concession of any liability whatsoever.  Securities Class Action, ECF No. 182.  The Securities Class Action settlement was funded with proceeds from BD's directors' and officers' ("D&O") insurance, with no monetary outlay by BD (above the self-insured retention) or any defendant.  *See* Stip., §I(D).  On April 22, 2024, the Court entered judgment granting the lead plaintiff's motion for final approval of the Securities Class Action settlement and dismissed the Securities Class Action with prejudice on April 26, 2024.  Securities Class Action, ECF No. 197.

### C.    **Settlement Negotiations**[9]

On June 27, 2024, the Parties participated in a mediation session led by the Mediator.  *See* Stip., §I(E).  The Parties were unable to agree on settlement terms at that time.  *Id.*  Following the mediation, the Parties continued arm's-length settlement negotiations, both directly and with the Mediator, regarding the monetary component of any proposed settlement.  *Id.*  The Parties ultimately accepted the Mediator's double-blind proposal with respect to a monetary payment to BD by the D&O insurance carriers, and thereafter negotiated and reached agreement on the Governance Modifications, all as memorialized in the binding Term Sheet executed on November 29, 2024 and further documented in the Stipulation pursuant to the requirements of the Term Sheet.  *Id.*

---

[9] This recitation is based on the agreed facts set forth in section I(E) of the Stipulation.

After executing the Term Sheet, Plaintiffs' Counsel and counsel for Defendants, with the assistance of the Mediator, separately negotiated the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel, subject to Court approval. Acknowledging that (a) the pendency and settlement of the Derivative Actions, and Plaintiffs' efforts in connection therewith, were the cause of the Settlement Fund and a material factor in the implementations of the Governance Modifications, (b) the Governance Modifications confer a material benefit on BD, and (c) the Settlement is in all respects fair, reasonable, and in the best interests of BD and its stockholders, Defendants and the Company agreed to the Fee and Expense Amount of $3,470,000, subject to Court approval. Stip., ¶6.1.[10]

## III.    SETTLEMENT CONSIDERATION

The Settlement provides for a one-time $9 million cash payment by Defendants' D&O insurance carriers to BD. Stip., ¶2.4. In addition, within sixty (60) days of the Effective Date, BD shall implement, and shall maintain for a minimum of four (4) years, the Governance Modifications. As discussed in section V.B.1., *infra*, the Governance Modifications include (i) enhancements to the duties and responsibilities of the management-level Disclosure Committee, which will be reflected in an amended Charter; (ii) enhanced Board reporting related to regulatory

---

[10] As is customary, Plaintiffs will address the merits of the proposed Fee and Expense Amount in connection with the final settlement approval proceedings.

compliance issues; (iii) a requirement that BD retain an independent corporate governance expert to review and evaluate BD's corporate governance practices, compare these practices with best practices, and assist the CGNC in developing recommendations to the Board regarding any actions to take based on its evaluation, including the implementation of new processes and procedures as necessary; (iv) a requirement that BD publish on its corporate website its complete Insider Trading Policy and its Discretionary Clawback Policy; and (v) enhanced director independence vetting requirements.  Stip., ¶¶2.1-2.3 & Ex. A.

The Parties agree that: (a) the initiation, pendency and settlement of the Derivative Actions, and Plaintiffs' efforts in connection therewith, including pre-suit, were the cause of the creation of the Settlement Fund and were a material factor in the implementation of the Governance Modifications; (b) the Governance Modifications confer a material benefit on BD; and (c) the Settlement is in all respects fair, reasonable, and in the best interests of BD and its stockholders, as set forth in the Company's Declaration, attached as Ex. A-1 hereto, attesting to the resolutions passed by the Board approving the Settlement.  Stip., ¶2.3 & Ex. A-1.

## IV.   STANDARDS FOR PRELIMINARY APPROVAL

"A derivative action may be settled … only with the court's approval."  Fed. R. Civ. P. 23.1(c)(1).  Courts approve derivative settlements when they are determined to be "'fair, adequate, reasonable and proper and in the best interests of

14

the class and the shareholders.'" *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993). The central question in evaluating the fairness, reasonableness, and adequacy of a derivative settlement is whether the benefit guaranteed by the settlement outweighs the prospects for a substantially greater recovery through further litigation, discounted by the costs, delays, and management distraction further litigation will entail, and the risks that further litigation will sacrifice the settlement benefit and produce no recovery at all. In making this assessment, courts recognize that public policy "particularly favor[s]" the settlement of stockholder derivative actions because such litigation is "notoriously … unpredictable[.]" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). The Third Circuit has recognized that "[t]here is an overriding public interest in settling" such complex litigation. *In re Warfarian Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re Gen. Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting Third Circuit "policy of encouraging settlement of complex litigation that otherwise could linger for years"); *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) ("the law encourages and favors settlement of civil actions in federal courts, particularly in complex class actions").

The "general practice" in derivative suits is the parties first submit the settlement to the Court for preliminary approval along with a request for leave to disseminate notice and set a final approval hearing for consideration of the settlement's substantive merit.  *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3D §1839 (2007).  At the preliminary approval stage, courts "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct the preparation of notice of the … proposed settlement, and date of the fairness hearing." *Manual for Complex Litigation*, §21.632 (4th ed. 2004) ("*Manual*"); *see In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004). The Court's determination of the settlement's substantive merit is reserved for the final approval hearing.  *Id*.

On preliminary approval, the Court need only "determine[] whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies … and whether it appears to fall within the range of possible approval." *See Tenuto v. Transworld Sys., Inc.*, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001); *see Thomas v. NCO Fin. Sys., Inc.*, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (citing *In re BD Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *Manual*, §23.14.  Preliminary approval is "appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no

obvious deficiencies and the settlement falls within the range of reason." *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see Jones v. Com. Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("[p]reliminary approval … is granted unless a proposed settlement is obviously deficient"); *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2016 WL 7130935, at *2 (D.N.J. May 25, 2016) (applying standard and granting preliminary approval where settlement fell within the range of reasonableness).

## V. THE SETTLEMENT FALLS WITHIN THE RANGE OF APPROVAL AS FAIR, REASONABLE, AND ADEQUATE

### A. The Settlement Warrants a Presumption of Fairness

In considering whether a proposed settlement discloses grounds to doubt its fairness, courts "focus[] on whether the settlement is the product of 'arms-length negotiations.'" *In re Auto. Refinishing Paint Antitrust Litig.*, 2006 U.S. Dist. LEXIS 93936, at *5 (E.D. Pa. Dec. 28, 2006) (citing *In re BD Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)); *see Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) ("common inquiry is whether the proposed settlement is the result of 'arms-length negotiations'"). Settlements are "the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution." *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *9 (E.D. Pa. Sept. 24, 2019). Where that process involves "arms-length negotiations conducted by experienced and highly

17

capable counsel[,]" settlements are presumed to be fair.  *In re Metro. Life Ins. Co. Sales Pracs. Litig.*, 1999 WL 33957871, at *25 (W.D. Pa. Dec. 28, 1999); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("where a settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters[,]" a "presumption of fairness exists").

The Settlement merits the presumption of fairness because it is the product of months of hard-fought negotiations conducted at arm's-length by Plaintiffs' Counsel with decades-long track records of securing significant results in class and derivative litigation and top-ranked corporate defense counsel.  *See Ocean Power*, 2016 WL 6778218, at *11 (recognizing "initial presumption of fairness" where settlement was negotiated over extended period by experienced counsel); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) (experienced counsel's "approval of the Settlement also weighs in favor of the Settlement's fairness"); *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("courts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class'"); *Huffman v. Prudential Ins. Co.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (court should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action'"); *In re ViroPharma Inc. Sec. Litig.*,

2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (courts "'afford[] considerable weight to the views of experienced counsel regarding the merits of the settlement'"); *Mehling*, 246 F.R.D. at 473 (settlement preliminarily approved where parties engaged in "hard-fought and lengthy negotiation[s]"); *Auto. Refinishing*, 2004 WL 1068807, at *2 (preliminary approval granted where "settlement was reached after extensive arms-length negotiation between very experienced and competent counsel for [the parties].").

The Mediator's central role in the Parties' negotiations provides further assurances that the negotiations were conducted at arm's-length, free of collusion, and properly focused on the relevant factual and legal considerations. *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.'"); *Copley v. Evolution Well Servs. Operating, LLC*, 2023 WL 1878581, at *4 (W.D. Pa. Feb. 10, 2023) (experienced mediator confirms settlement negotiations conducted at "arm's length"); *Utah Ret. Sys. v. Healthcare Servs. Grp. Inc.*, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) (involvement of neutral mediator points to an arm's-length negotiation); *Bredbenner*, 2011 WL 1344745, at *10 (independent mediator "virtually [e]nsures that the negotiations were conducted

at arm's length and without collusion between the parties").[11]

Moreover, as discussed in section V.B.3., *infra*, the Parties' decisions about whether, when, and on what terms and conditions to settle were well-informed. Plaintiffs' Counsel carefully evaluated the public record concerning issues with the Alaris System; the record developed in the underlying Securities Class Action and other related matters; the discovery provided regarding the formation and independence of the members of the Special Committee, the Special Committee's investigation into Plaintiffs' demands, and the Board's ultimate determination to refuse the demands; the confidential information exchanged before and during the mediation process regarding the merits and defenses, insurance, indemnification, damages, and related matters; and the arguments of Defendants' counsel and views of the Mediator regarding the relative strength of the claims and defenses exchanged and refined over the course of the extended mediation process and settlement negotiations. As a result, "'counsel had an adequate appreciation of the merits of the case before negotiating'" the Settlement. *Warfarin*, 391 F.3d at 537; *see also In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *10 (D.N.J. Mar. 26, 2010) (similar); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005) (plaintiffs' counsel's investigation and careful "consider[ation] [of] the factual and

---

[11] The Mediator also mediated the related Securities Class Action and, thus, was familiar with the underlying factual allegations and defenses and the strengths and weaknesses of the case.

legal questions that were disputed in the derivative actions" support approval).

## B. The Relevant *Girsh* Factors Confirm the Settlement Falls Within the Range of Reasonableness

In evaluating whether a proposed derivative settlement falls within the range of reasonableness, courts consider the factors established for class actions in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (the *"Girsh* factors"), including:

> (1) the complexity, expense and likely duration of the litigation...; (2) the reaction of the [stockholders] to the settlement...; (3) the stage of the proceedings and the amount of discovery completed...; (4) the risks of establishing liability...; (5) the risks of establishing damages…; (6) the risks of maintaining the … action through the trial…; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery…; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation....

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (omissions in original).    While the *Girsh* factors are more closely considered on final approval, they remain "relevant to guide the Court at the preliminary stage as well." *Vinh Du v. Blackford*, 2018 U.S. Dist. LEXIS 167103, at *14 (D. Del. Sept. 28, 2018).  Moreover, while these standards provide guidance, they are "applied … with somewhat less rigor, in the settlement of stockholders' derivative suits[.]" *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978); *Mulroy v. Nat'l Water Main Cleaning Co. of N.J.*, 2014 WL 7051778, at *2 (D.N.J. Dec. 12, 2014) (similar).  "'[T]he absence of one or more does not automatically render the settlement unfair[.]'" *Schering-Plough*, 2010 WL 1257722, at *5; *In re Am. Fam.*

*Enters.*, 256 B.R. 377, 418 (D.N.J. 2000) (similar).  The Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness." *Schering-Plough,* 2010 WL 1257722, at *5.[12]

A preliminary assessment of the applicable *Girsh* factors confirms the Settlement falls well within the range that might be approved as fair and reasonable.

### 1.    The Settlement Confers Substantial Benefits on BD

The principal factor in determining the fairness of a derivative settlement is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."   *Shlensky*, 574 F.2d at 147; *see In re Pittsburgh & L. E. R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1068 (3d Cir. 1976) ("Since the corporation is the intended beneficiary of the suit, fairness of the settlement must in the first instance … be measured by the benefit or detriment to [the corporation]."); *Bell*, 2 F.3d at 1311 ("[t]he principal factor ... is the extent of the benefit") (omission in original); *Unite Nat. Ret. Fund v. Watts*, 2005 WL 2877899, at *2 (D.N.J. Oct. 28, 2005) (same).

A settlement may be reasonable and adequate even when the recovery "only amount[s] to a fraction of the potential recovery." *In re AT&T Corp.*, 455 F.3d 160,

---

[12] Certain *Girsh* factors are not applicable.  For example, notice of the Settlement has not yet been published, so the Court cannot yet gauge the "reaction of [stockholders] to the [S]ettlement" (the second *Girsh* factor). *Id.* at *9. Additionally, "[t]he risk of maintaining the class action throughout trial" (the sixth *Girsh* factor) "is inapplicable to stockholder derivative actions." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484 (D.N.J. 2012).

170 (3rd Cir. 2006) (adequacy of recovery must be considered relative to "all the risks considered under *Girsh*").  Here, the Settlement provides for a $9 million cash payment to BD by the Individual Defendants' D&O insurance carriers.  Stip., ¶¶1.29, 2.4.  The Settlement Fund actually exceeds the amount BD paid out-of-pocket to resolve the related Securities Class Action—the primary harm for which the Derivative Actions seek to recover on BD's behalf.[13]  The Settlement Fund reflects a risk-adjusted recovery falling well above the range that courts routinely approve. *See, e.g.*, *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (approving settlement representing approximately 4% of estimated damages as "fall[ing] squarely within the range of previous settlement approvals"); *Utah Ret. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *8 (E.D. Pa. Jan. 12, 2022) (6.4% recovery); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *8 (D.N.J. July 29, 2013) (7% recovery); *In re Hemispherx Biopharma, Inc. Sec. Litig.*, 2011 WL 13380384, at *6 (E.D. Pa. Feb. 14, 2011) (5.2% recovery); *Beltran v. SOS Ltd.*, 2023 WL 319895, at *6 (D.N.J. Jan. 3, 2023) (approving recovery of 6.5% and noting "typical settlement recoveries" range from "roughly 1.6 to 14 percent").[14]

In addition to the $9 million Settlement Fund, the Settlement also provides

---

[13] All but $3.7 million of the funds used to settle the Securities Class Action was covered by D&O insurance.

[14] The path to securing a recovery for other alleged damages – e.g., harm arising from regulatory exposure, alleged insider selling, and/or alleged oversight failures – materially greater than the $9 million Settlement Fund through further litigation would have been exceedingly difficult.  *See, e.g.*, section V.B.2., *infra*.

that BD shall implement and maintain the Governance Modifications for a minimum of four years.  Stip., ¶¶2.1-2.3 & Ex. A.  Courts have long recognized that "a corporation may receive a 'substantial benefit' from a derivative suit ... regardless of whether the benefit is pecuniary in nature."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *4 (S.D.N.Y. Sept. 6, 2006) (non-monetary benefits can be "substantial enough to merit [settlement] approval"); *Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) (same).  That is because "[s]trong corporate governance is fundamental to the economic well-being and success of a corporation[,]" and governance reforms designed to prevent recurrence of alleged wrongdoing "provide valuable benefits to public companies[.]"  *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009).  Settlements supported by governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws" are generally found reasonable and adequate because such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators and prosecutors."  *Cohn*, 375 F. Supp. 2d at 853; *see also Unite Nat'l*, 2005 WL 2877899, at *2 (holding corporate governance benefits designed "to prevent future harm" support settlement).[15]

---

[15] In fact, in many circumstances, the economic value of strong prophylactic reforms

Here, the Settlement provides for valuable enhancements to BD's corporate governance.

First, the Settlement provides for enhancements to the duties and responsibilities of BD's Disclosure Committee. Specifically, the Settlement requires the Disclosure Committee to form a subcommittee to review at the Disclosure Committee's regular meetings additional materials related to BD's quarterly earnings press releases—including earnings conference call scripts—to determine the adequacy and accuracy of the disclosures included therein (in addition to the full Disclosure Committee's review of the quarterly earnings press releases themselves). The Settlement further requires the Disclosure Committee (through the CEO and CFO) to designate a formal Chairperson with responsibility for, *inter alia*, scheduling and presiding over meetings and ensuring the timely preparation of agendas for, and a written record of, meetings, and for interpreting the Charter or the Disclosure Committee's procedures. The Chairperson of the Disclosure Committee will be required to report at least quarterly to the Audit Committee, and at least annually to the full Board. Further, the Disclosure Committee will conduct annual reviews of its Charter to identify industry-leading oversight practices for

---

far outweighs any likely monetary recovery. *See Maher*, 714 F.2d at 461 ("the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor"); *Cohn*, 375 F. Supp. 2d at 853 (corporate governance reforms "achieved independently of any monetary benefits … are even more worthwhile").

implementation in connection with the Company's disclosure practices, with any changes to the Charter requiring approval by the CEO and CFO.[16]  Together, these reforms will improve BD's disclosure oversight function at both the management- and Board-level, will help ensure the accuracy and truthfulness of the Company's public statements (including in earnings conference calls) moving forward, and will help prevent the type of alleged disclosure failures at issue here.

Second, the Settlement provides for enhanced reporting from management to the Board with respect to product and regulatory compliance issues.  The Settlement requires BD's General Counsel, Chief Medical Officer, Chief Ethics & Compliance Officer, Chief Quality & Regulatory Officer, and (as appropriate) Chief Regulatory Counsel and other officers to timely update the Board and/or appropriate committee at each meeting regarding: (i) any material compliance violations by BD that are raised by the FDA or other regulatory agencies that fall under their respective purviews; and (ii) any material adverse developments in product manufacturing, distribution, or commercialization, including efficacy or safety data, in each case that would potentially materially impact BD's financing and/or the probability of regulatory approval of key products under development.  These enhanced, formal reports from management to the Board and/or appropriate committee at every

---

[16] These changes are reflected in a new, amended Disclosure Committee Charter, which BD provided to Plaintiffs' Counsel during Settlement negotiations.

meeting will help ensure the Board is fully and timely informed about material regulatory compliance violations and product-related issues and, thus, is able to exercise real oversight and take appropriate action (as necessary) to ensure compliance and to protect the Company from actual or potential harm.

Third, the Settlement requires the Board to hire an independent corporate governance expert to review and evaluate BD's corporate governance practices, compare these practices with best practices, and assist the CGNC in developing recommendations to the Board regarding any actions to take based on its evaluation, including the implementation of new processes and procedures. This is a critical measure that will provide a fresh, outside, independent set of eyes on BD's corporate governance overall, with the benefit of hindsight as to what has worked and what has not worked at the Company.

Fourth, the Settlement will strengthen the vetting of the independence of Board members by requiring: (i) each Independent Director to annually certify in writing that he or she is independent, based on the information in the Director and Officer Questionnaire, and (ii) that the review of disclosures regarding director independence in BD's Proxy Statement include an evaluation by the CGNC of relationships that might compromise the director's independence, and requiring that the CGNC's findings be presented to the full Board for consideration and approval.

Fifth, and finally, the Settlement provides for enhanced transparency of BD's

corporate governance processes to stockholders and the public at large by requiring that BD post on the Investor Relations portion of its website both its Insider Trading Policy and its Discretionary Clawback Policy. This will allow stockholders a more complete understanding of BD's insider trading and clawback policies and procedures, will better equip them to evaluate BD's governance and its fiduciaries' compliance therewith, and will permit them to make more informed decisions as stockholders. This will also send a clear signal to stockholders and the public that BD is forthright and transparent with regard to corporate governance.

These Governance Modifications, taken together, confer real and substantial economic benefits on BD and its stockholders, including by: (i) strengthening BD's and the Board's oversight and control of BD's public disclosures, which will significantly reduce the likelihood that BD and its stockholders will suffer a repeat loss of investor confidence and legal and/or regulatory exposure; (ii) enhancing the value of BD through more active Board oversight, stronger internal controls and enhanced transparency, and thus supporting better management decisions; and (iii) ensuring investor confidence in the accuracy of BD's disclosures, the integrity of its management, and the independence of the Company's corporate governance and Board's oversight function. Indeed, the Board itself has affirmatively determined, in the good faith exercise of its business judgment, that the Governance Modifications confer a material benefit on the Company. *See* Stip., Ex. A.

BD has agreed to maintain the Governance Modifications for a minimum of four (4) years—a substantial amount of time intended to ensure the governance measures provided therein become embedded in the Company's policies, practices, and corporate culture. *See Cohn*, 375 F. Supp. 2d at 850 (corporate governance measures in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

    **2.    The Settlement's Substantial Benefits Far Outweigh the Speculative Chance that a Substantially Greater Recovery Might Be Secured Through Further Litigation (First, Fourth, Fifth, Eighth, and Ninth *Girsh* Factors)**

The fourth and fifth *Girsh* factors "may appropriately be analyzed together for purposes of preliminary approval[.]" *Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014). These ask "'whether the settlement is reasonable in light of the best possible recovery and the risks the parties would [f]ace if the case went to trial.'" *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *5 (D.N.J. June 20, 2013) (quoting *In re BD Ins. Co. of Am. Sales Prac. Litig.*, 148 F.3d 283, 322 (3d Cir. 1998)); *see also Gen. Motors. Corp.*, 55 F.3d at 814-16 (factors consider the potential risks and rewards of litigating the action "rather than settling it at the current time"). Evaluating the factors, courts must "guard against demanding to[o] large a settlement based on the court's view of the merits." *Ocean Power*, 2016 WL 6778218, at *21 (alteration in original). Here, a "survey [of] the potential risks and rewards of proceeding to litigation" demonstrates that "the

benefits of an immediate settlement" outweigh the costs, risks and delays that would arise in further litigation. *Johnson & Johnson*, 900 F. Supp. 2d at 483.

"Shareholder derivative litigation is always 'notably difficult and unpredictable.'" *Plymouth Cnty. Contributory Ret. Sys. v. Hassan*, 2012 WL 664827, at *3 (D.N.J. Feb. 28, 2012). "[T]he odds of winning [a] derivative lawsuit [a]re extremely small." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Gen. Motors Corp.*, 55 F.3d at 784. Plaintiffs believe the claims have merit. But they would confront challenges in proving liability and damages, securing a substantially greater recovery at trial, and defending post-trial challenges.

If the Derivative Actions did not settle, Plaintiffs likely would have moved for additional discovery into the investigation of the Demands. *See* N.J.S.A. § 14A:3-6.5(5)(c); *In re Prudential Financial, Inc.*, 2022 WL 20747701 (D.N.J. July 19, 2022) (affirming Magistrate Judge's opinion and order authorizing limited discovery under the NJBCA where plaintiffs had identified evidence that the board's decision was not made in good faith). While Plaintiffs are confident in their strong position on limited discovery under New Jersey law, Defendants forcefully maintained that they provided Plaintiffs all documents and information to which they were entitled regarding the Special Committee process under applicable law, and the process would undoubtedly have been protracted. Moreover, Plaintiffs would still need to defeat Defendants' motions to dismiss under Rule 23.1—an exceedingly difficult

task for stockholder plaintiffs in derivative litigation in the face of a Special Committee investigation refusing their demands.  *See* N.J. Stat. Ann. § 14A:3-6.5(1)(a), (2)(a).  If Plaintiffs could not establish a lack of independence,[17] they would bear the burden of alleging particularized facts showing that the independent directors did not "ma[k]e the determination in good faith after conducting a reasonable inquiry upon which the conclusions are based."  N.J.S.A. §§14A:3-6.5(4), (5)(a)(ii); *see In re PSE & G S'holder Litig.*, 173 N.J. 258, 291 (2002) ("the court's inquiry is not into the substantive decision of the board, but rather ... into the procedures employed by the board in making its determination").  While Plaintiffs believe they have a strong basis for alleging their demands were wrongfully refused, they faced considerable risk given the statutory presumptions in Defendants' favor.  *See, e.g.*, *Gottlieb, on behalf of Johnson & Johnson v. Beckerle*, 2024 WL 678007, at *7 (N.J. Super. Ct. Feb. 20, 2024) (affirming dismissal under N.J.S.A. §§14A:3-6.5).

Even if Plaintiffs defeated the Defendants' motions to dismiss, they would face major obstacles in proving that the Individual Defendants breached their fiduciary duties.  Plaintiffs would have to show the Individual Defendants knowingly

---

[17] *See In re Prudential Ins. Co. Deriv. Litig.*, 282 N.J. Super. 256, 276 (1995) (allegations of personal friendships or outside business relationships with other directors, or service on the board of a corporation that engaged in a transaction that is the subject of the investigation, are not, standing alone, sufficient to establish a lack of independence).

disseminated materially false and misleading statements (*see, e.g., Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998)),[18] consciously disregarded their oversight responsibilities (*see King v. Baldino*, 409 F. App'x 535, 537–38 (3d Cir. 2010)), and/or possessed material nonpublic Company information and used the information improperly by insider trading (*In re Oracle Corp.*, 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005)). These are among the most difficult claims upon which to recover in corporate law. *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) (claim based on oversight liability is "possibly the most difficult theory in corporation law").

In the Securities Class Action, this Court initially granted the defendants' motion to dismiss in its entirety, finding, *inter alia,* no actionable false and misleading statements, and that the challenged stock sales by certain of the individual defendants did not support an inference of scienter, dismissing one of them from the case entirely. *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, No. 2:20-cv-02155-SRC-CLW, 2021 WL 4191467, at *10-21 (D.N.J. Sept. 15, 2021). Ultimately, the Court upheld (at the pleading stage) claims as to other alleged misstatements made by one individual defendant. *See Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 192-99,

---

[18] New Jersey "look[s] to Delaware courts for guidance on matters of corporate law." *Kuehl v. electroCore, Inc.*, 2023 WL 3444383, at *6 (N.J. Super. App. Div. May 15, 2023).

200 (D.N.J. 2022). Plaintiffs would face additional challenges proving derivative liability on these statements. *See Schering-Plough*, 2010 WL 1257722, at *10 ("'probing into the Defendants' minds to determine whether they acted honestly or in good faith'" is a "'complex question of fact'"). Without confessions or smoking guns, Plaintiffs would have to build a circumstantial case sufficient to overcome the business judgment presumption. *See, e.g.*, *Seidman v. Clifton Sav. Bank, S.L.A.*, 205 N.J. 150, 177 (2011) (explaining that the presumption of validity applicable under the business judgment rule can only "be rebutted ... if the challenged corporate actions are so far from the norm of responsible corporate behavior as to be unconscionable or constitute a fraud, impermissible self-dealing or corporate waste"). BD exculpates (and indemnifies) its officers and directors to the extent permitted by law, requiring proof of bad faith or knowing wrongdoing for any monetary recovery. *See* By-Laws of Becton, Dickinson and Company as amended April 29, 2025; Restated Certificate of Incorporation of Becton, Dickinson and Company as of January 30, 2019; N.J.S.A. §14A:2–7(3).

The challenges in proving damages are also daunting. Determining damages "is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002). Defendants would challenge the scope, basis, and

admissibility of Plaintiffs' experts' testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 585 (1993), *superseded on other grounds by* Fed. R. Evid. 702.

"A trial on the merits always entails considerable risk." *Plymouth*, 2012 WL 664827, at *3. And even if Plaintiffs succeeded at trial, Defendants "would likely appeal, which would further delay resolution of the suit and impede finality." *Johnson & Johnson*, 900 F. Supp. 2d at 484 ("real and extensive risks involved" "weigh[ed] heavily in favor of approval of the settlement"). Any such appeal could erase any recovery obtained at trial. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, 2008 WL 3072731, at *6 (D. Ariz. Aug. 4, 2008), *rev'd and remanded*, 2010 WL 5927988 (9th Cir. June 23, 2010) (overturning $277 million jury verdict citing insufficient evidence to establish loss causation; verdict only reinstated after two more years of litigation).[19]

The first *Girsh* factor also favors the Settlement: continued litigation would be expensive, time-consuming, and complex. *See In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008) ("Settlement is favored under this factor if litigation is expected to be complex, expensive and time consuming."); *Gen. Motors Corp.*, 55 F.3d at 812 (similar). Derivative litigation is

---

[19] For the seventh *Girsh* factor, even when defendants "are capable of withstanding a larger judgment," courts hold that "does not weigh heavily for or against the settlement." *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *6 (D. Del. Nov. 19, 2018); *Johnson & Johnson*, 900 F. Supp. 2d at 484 (defendant's ability to pay a larger settlement sum "is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement").

"undeniably complex[.]" *Unite Nat. Ret. Funds*, 2005 WL 2877899, at *3. The time and expense required to conduct discovery, summary judgment and pre-trial motions, and to present the Derivative Actions at trial would be "staggering." *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995). After extensive fact and expert discovery, Plaintiffs would have to brief and defeat motions for summary judgment and then turn to preparing the Derivative Actions for trial, overcoming pre-trial motions, and then try a complex case. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) ("the complex accounting issues involved with respect to damages" and "the need for expert review and testimony" increase likely expense and duration of litigation); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *4 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (that absent settlement parties would have to engage "in extensive additional discovery, as well as the exchange of pre-trial, and potentially, trial and post-trial motions[,]" weighed in favor of approval.). Even is Plaintiffs won at trial, "there is no question that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process." *Ocean Power*, 2016 WL 6778218, at *12.

The Settlement eliminates the expense and risks of continued litigation, including risk of no recovery for BD after years of additional litigation, while guaranteeing the Company "a substantial and certain recovery," undiminished by

further expenses and without the delays, risks, and uncertainties of continued litigation[.]" *Id.* at *13. The Settlement is within the range of reasonableness and warrants preliminary approval.

### 3. The Degree of Case Development Allows the Parties to Make Well-Informed Judgments Regarding the Merits and the Proposed Settlement (Third *Girsh* Factor)

Courts consider "the degree of case development" to determine whether "counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235. "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *See Johnson & Johnson*, 900 F. Supp. 2d at 482–83. Courts in this Circuit approve settlements "despite the absence of formal discovery" where the record indicates that the parties are nevertheless equipped to make informed judgments about the merits and settlement. *Ocean Power*, 2016 WL 6778218, at *17; *see Weaver v. Moen*, 2024 WL 4040355, at *3 (D. Del. Sep. 4, 2024) ("even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties") (quoting *Johnson & Johnson*, 900 F. Supp. 2d at 482); *In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 WL 2985634, at *10 (E.D. Pa. July 28, 2022) (holding that "formal proceedings and discovery are not required for plaintiffs to assess the

merits of their claims and their likelihood of success").

Here, although the Derivative Actions are still in the early stages, Plaintiffs gained a thorough understanding of the facts through Plaintiffs' Counsel's investigation before litigation, during the litigation, and in the mediation process. Plaintiffs' Counsel, *inter alia*: (i) reviewed and analyzed press releases, public statements, and SEC filings, securities and financial analyst reports, and business media reports about BD; (ii) analyzed the extensive fact and legal record reflected in the filings in the Securities Class Action and related litigation; (iii) researched and analyzed the law on the claims, damages and other remedies, pleading standards, anticipated affirmative defenses and insurance and indemnification; (iv) evaluated the record regarding the Special Committee investigation in response to Plaintiffs' litigation demands and Board deliberations, including the §14A:5-28 Production; (v) evaluated additional materials relating to the Special Committee's investigation and Board deliberations produced in response to Plaintiffs' document requests; (vi) assessed additional confidential information provided by Defendants in the course of the mediation relating to merits, insurance, and indemnification issues; (vii) evaluated defense counsel's arguments about the strengths and weaknesses of the various claims and defenses, and problems of proof offered during the course of the mediation process; (viii) researched and analyzed potential damages, disgorgement, and non-monetary remedies in preparing the settlement demands and during the

course of settlement negotiations; and (ix) reviewed BD's existing corporate governance policies and prepared proposed corporate governance revisions to strengthen BD's governance.  Stip., §II.

The Parties discussed settlement after thoroughly evaluating the risks of continued litigation.  They had sufficient information to support the fairness, adequacy, and reasonableness of the Settlement.  The Parties' decisions about whether, when, and on how to settle were fully informed and carefully considered.

## VI.    THE PROPOSED NOTICE, PROCEDURE, AND SCHEDULE FOR CONSIDERING FINAL APPROVAL AFFORD DUE PROCESS

The proposed form and manner of Notice to Current BD Stockholders comports with Rule 23.1(c) and meets due process standards.  *See generally Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Johnson & Johnson*, 900 F. Supp. 2d at 486 (settlement notice satisfies due process and Rule 23.1 standards when it is "sufficiently informative and give[s] sufficient opportunity for response").[20]  The proposed Notice and Summary Notice

---

[20] *See also Bell*, 2 F.3d at 1317 (notice held adequate where it "summarized the Bell of Pennsylvania matter, the procedural history, the parties' contentions, the issues involved, the reasons each party recommended settlement, and the terms of the settlement agreement" and it "advised shareholders of their right to object, the consequences of not doing so, and how to go about obtaining further information available on file with the court") (citing *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 395 (3d Cir. 1981)).

are adequate because they describe in plain language (i) the terms and conditions of the proposed Settlement; (ii) the facts and considerations that caused the Parties to conclude that the proposed Settlement is fair, reasonable, adequate, and serves BD's best interests; (iii) the proposed Fee and Expense Amount and service awards; (iv) the procedure for objecting to the proposed Settlement; and (v) the date, place, and time of the Settlement Hearing. Stip., Exs. B-1 and B-2.

The plan for disseminating notice also meets due process standards. The Stipulation provides that, within ten (10) business days after the entry of the Preliminary Approval Order, BD shall cause the Notice to be filed with the SEC as an exhibit to a filing on SEC Form 8-K, and BD shall publish the Summary Notice once in *Investor's Business Daily* or similar online publication. BD shall also publish the Stipulation and Notice on the "Investor Relations" page of BD's website, the address of which shall be contained in the Notice and Summary Notice. Stip., ¶3.2. Courts routinely approve similar published notice of derivative settlements.[21]

Finally, the proposed final approval schedule and procedures afford

---

[21] *See, e.g.*, *In re MRV Communs., Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *6 (C.D. Cal. June 6, 2013) (approving settlement where notice was filed as an attachment to a Form 8-K, published on company's website, and published for one day in *Investor's Business Daily*); *In re Biopure Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 148025, at *3 (D. Mass. July 24, 2009) (approving derivative settlement where notice program consisted of a Form 8-K SEC filing, a posting on the company's website, and a press release); *Allred v. Walker*, 2021 U.S. Dist. LEXIS 236249, at *8 (S.D.N.Y. Dec. 9, 2021) (approving settlement after notice was published on *GlobeNewswire*, in an SEC Form 8-K filing, and on the company's website).

stockholders a reasonable opportunity to consider the Settlement and to comment or object:

| | |
|---|---|
| The Company shall cause publication of the Summary Notice in *Investors' Business Daily* or similar online publication; the Company shall post the Notice and Stipulation (including exhibits) on the Company's website; the Company shall file a Current Report on Form 8-K with the SEC attaching the Notice | No later than ten (10) business days after the Court's entry of the Preliminary Approval Order |
| Plaintiffs file their papers in support of final approval of Settlement and Fee and Expense Amount and service awards | No later than twenty-one (21) days prior to the date of the Settlement Hearing |
| Defendants' Counsel file affidavit or declaration confirming timely dissemination of the Notice and Summary Notice | No later than thirty (30) days prior to the date of the Settlement Hearing |
| Last day for Current BD Stockholders to file and serve comments or objections | No later than fourteen (14) days prior to the date of the Settlement Hearing |
| Plaintiffs' reply/response to any comments or objections | No later than seven (7) days prior to the date of the Settlement Hearing |
| Settlement Hearing | A date to be set at the Court's convenience, not less than sixty (60) calendar days after Preliminary Approval Order |

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) preliminarily approve the terms of the Settlement as set forth in the Stipulation and enter the proposed Preliminary Approval Order; (ii) approve the form and manner of disseminating the Notice and Summary Notice to Current BD Stockholders; and (iii) schedule the Settlement Hearing to consider final approval of the Settlement.

Dated: June 6, 2025                    Respectfully submitted,

                                       **HERMAN JONES LLP**

                                       *s/ Serina M. Vash*
                                       _____
                                       SERINA M. VASH
                                       (NJ Bar. No. 041142009)
                                       153 Central Avenue #131
                                       Westfield, NJ 07090
                                       Telephone: (404) 504-6516
                                       Facsimile: (404) 504-6501
                                       svash@hermanjones.com

                                       **DILWORTH PAXSON LLP**
                                       LISA J. RODRIGUEZ
                                       1500 Market Street, Suite 3500E
                                       Philadelphia, PA 19102
                                       Tel: (856) 675-1926
                                       ljrodriguez@dilworthlaw.com

                                       *Co-Liaison Counsel for Plaintiffs*

                                       **ROBBINS LLP**
                                       BRIAN J. ROBBINS
                                       CRAIG W. SMITH
                                       SHANE P. SANDERS
                                       5060 Shoreham Place, Suite 300
                                       San Diego, CA 92122
                                       Telephone: (619) 525-3990
                                       Facsimile: (619) 525-3991
                                       brobbins@robbinsllp.com
                                       csmith@robbinsllp.com
                                       ssanders@robbinsllp.com

                                       **GLANCY PRONGAY & MURRAY LLP**
                                       BENJAMIN I. SACHS-MICHAELS
                                       MATTHEW M. HOUSTON
                                       745 Fifth Avenue, Fifth Floor
                                       New York, NY 10151

Telephone: (212) 935-7400
Facsimile: (212) 756-3630
Email:
bsachsmichaels@glancylaw.com
mhouston@glancylaw.com

-and-

ROBERT V. PRONGAY
PAVITHRA RAJESH
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
prajesh@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

1694334

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of June, 2025, I will electronically file the

foregoing with the Clerk of the Court using the CM/ECF system, which will then

send a notification of such filing (NEF) to all counsel of record.

*s/ Serina M. Vash*
Serina M. Vash